IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | DOCKET NO. 1:16-CR-67 |
| | ) | |
| Plaintiff, | ) | The Honorable Max O. Cogburn Jr. |
| | ) | |
| vs. | ) | **POSITION OF THE DEFENDANT** |
| | ) | **WITH RESPECT TO SENTENCING** |
| JOSEPH HAROLD PATTERSON, | ) | **FACTORS** |
| | ) | |
| Defendant. | ) | |

On August 30, 2017 the defendant, Joseph Harold Patterson ("Patterson"), will come before this Honorable Court for sentencing in connection with a guilty plea to one count of Transportation of a Minor to Engage in Sexual Activity in violation of Title 18 United States Code §2423(a). The purpose of this memorandum in support of sentencing is threefold: 1) To bring to light additional information pertinent to Patterson's sentencing; 2) To have the Court determine certain sentencing factors which may or may not apply; 3) To move the Court for a downward departure when sentencing Patterson. Patterson submits to the Court that a sentence near the mandatory minimum is clearly warranted. As the guidelines are but one factor that this Honorable Court must consider when imposing a sentence pursuant to 18 U.S.C. §3553, the information contained herein, together with information to be presented at the sentencing hearing, justifies a sentence nearer the mandatory minimum of 10 years.

## I.   BACKGROUND

On August 15, 2015, Special Agent Kirby Styles ("SA Styles") with the National Park Service received a phone call from a concerned father that his son had been the victim of inappropriate sexual activity during various camping trips that Patterson had

1

taken with his son and other minors to the Great Smoky Mountain National Park from Anderson, South Carolina. SA Styles initiated a joint investigation with the Anderson Police Department and the South Carolina Attorney General's office. PSIR ¶5. Patterson was arrested on August 26, 2015 in South Carolina at his work with assistance from United States Marshal Service and CSX railroad police. PSIR ¶18. On August 27, 2015, law enforcement obtained a search warrant for Patterson's residence located at 210 Holly Ridge Drive, Anderson, South Carolina. The search warrant included the search of storage buildings, a vehicle, computers and computer related devices. PSIR ¶18.

Following Patterson's arrest, he was transported to Anderson County for processing and booking. On June 7, 2016 a five-count bill of indictment was filed in the Western District of North Carolina, Asheville Division. Patterson remained in the custody of Anderson County Detention Facility until on or about October 12, 2016 when, pursuant to a writ of habeas corpus, Patterson was arrested by U.S. Marshals and brought to the Western District of North Carolina. PSIR, generally. On February 6, 2017, the Court conducted a Rule 11 hearing wherein Patterson pled guilty to count 1 contained in the Bill of Indictment pursuant to a written plea agreement. PSIR ¶2. As part of the plea agreement, Patterson reserved the right to argue in favor of any reduction that may apply and it was agreed that Patterson may seek a departure or variance from the applicable guideline range. Plea Agreement, ¶8. Since Patterson's arrest on October 12, 2016 he has been held at the Swain County Detention Facility.

2

## II.   AT THE TIME OF SENTENCING, IT WILL BE THIS HONORABLE COURT'S DUTY TO IMPOSE A SENTENCE SUFFICIENT, BUT NOT GREATER THAN NECESSARY TO COMPLY WITH THE PURPOSES OF FEDERAL SENTENCING.

At the time of sentencing, it is respectfully submitted that it will be this Honorable Court's duty to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing as set forth in 18 U.S.C.§3553(a).  In light of United States v. Booker, 543 U.S. 220 (2005), this Honorable Court shall engage in a multi-step analytical process at sentencing.  First, this Court must correctly determine, after making appropriate findings of fact, the applicable Guidelines range.  United States v. Moreland, 437 F.3d 424, 432 (4th Cir. 2006).  After making appropriate findings of fact, this Honorable Court must make an individualized determination as to whether a sentence within that range serves the factors set forth in §3553(a).  Id. (See also United States v. Salazar, 2007 U.S. App. Lexis 16223 (4th Cir. 2007)).  Finally, this Court must consider said factors and articulate the reasons for the sentence imposed in light of the factors set forth in §3553(a) Id., bearing in mind that the guidelines provide a requisite starting point in any sentencing determination, and are not determinative of a district court's ultimate decision when sentencing a defendant.  United States v. Brattain, 539 F.3d 445, 448-49 (6th Cir. 2008).

### A.   Examination of the factors set forth in 18 U.S.C. §3553(a) indicates that a sentence nearer the bottom of the Guideline range for Mr. Rhoda is a reasonable and appropriate sentence.

#### 1.   Nature and circumstances of the offense and the history and characteristics of the Defendant.

##### a.   Nature and circumstances of the offense

In August, 2015, a joint investigation between the Anderson Police Department, South Carolina's Attorney General's office and the National Park Service investigated

allegations of inappropriate sexual contact between Patterson and three minor victims all of whom resided in Patterson's hometown of Anderson, South Carolina. This investigation revealed that in 2010 Patterson, along with two minor boys, both 12, traveled from Anderson, South Carolina to the Smokemont campground located within the Great Smoky Mountains National Park in Swain County, North Carolina. PSIR ¶¶6-7. At one point during this trip, while Patterson and both minors were in the tent, Patterson demonstrated how to masturbate. Thereafter, he encouraged the boys to masturbate, which they did. PSIR ¶8. In 2011, Patterson again scheduled a camping trip with the same two boys from 2010 plus an additional minor. At that time, in 2011, all three minor boys were 13 years old. PSIR ¶9. During this trip, Patterson described masturbation to the boys and purchased some lubrication and condoms. Patterson encouraged the boys to use the lubrication and condoms while masturbating. The boys attempted to masturbate while Patterson was in the tent but expressed that they felt uncomfortable. Patterson was asked by the boys to leave the tent while they masturbated, which he did. PSIR ¶10. There is no evidence or any victim statements that Patterson ever made physical contact or engaged in any sexual act with any of the minor victims. After Patterson's arrest and at an early stage in the investigation Patterson made a voluntary statement wherein he admitted to masturbating at Smokemont to show the two minor victims and to discussing inappropriate sexual details with minors. PSIR ¶14. At least one United States Circuit Court has noted that a case that involves only the encouragement to touch oneself without the desire to meet and either fondle or have sex with a minor victim makes that specific case unusual. United States v. Taylor, 640 F. 3D 255, 263 (7th Cir. 2011)(where the defendant did not

want to meet the minor victim to have sex with or to fondle, only to touch herself, makes the case unusual.)

> **b.** **The history and characteristics of Mr. Joseph Patterson.**

Patterson is 58 years old and a widower. Prior to this case, Patterson had never been accused of any crime. Patterson is the middle child of 3 whose sister, Faith, is younger and brother, Barry, older.

Patterson attended school in Anderson, South Carolina. In June, 1976 he graduated from TL Hanna High School. Thereafter, in August, 1976 Patterson began attending the Citadel in Charleston, South Carolina. He graduated from the Citadel on May 17, 1980 with a Bachelor of Science degree in Business Administration. After completing his college degree at the Citadel, Patterson returned to Anderson.

Patterson had been gainfully employed since 1980 by CSX Transportation in Greenwood, South Carolina. Since 1992 Patterson has been licensed to operate a locomotive and since that time had been employed as a locomotive engineer. After his arrest, Patterson voluntarily resigned from CSX Transportation in August, 2016.

Patterson married his wife Diann in 1983. No children were born to this marriage. Together they lived primarily at two different locations in Anderson, to wit, 701 Ivy Circle and 210 Holly Ridge Drive. In May, 2016, Patterson's wife of 33 years was diagnosed with an aggressive form of cancer. Within three months Diann Patterson lost her battle with cancer and died on August 19, 2016. This all occurred while Patterson was in custody. However, as a result of the compassion shown by the Anderson County Detention Facility and the Attorney General's office, Patterson was released from

custody on August 17, 2016 during the time when his wife's death was imminent. Patterson returned to custody on August 23, 2016 after his wife's funeral service.

Upon release, Patterson will return to his current address where he has lived since 1996.

From all accounts, Patterson led a very normal and happy life. However, the fact that he never had children of his own weighed heavily on him and he went to great efforts trying to develop a paternal bond with children, including the victims of this case. Patterson is extremely sorry for and ashamed of what he did and he knows there is no excuse for these acts. He is a very faithful man and never did he think his faith would allow him to conduct himself in this manner. He is extremely remorseful for his actions.

### 2. Need for the sentence imposed --

#### a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

At the time of sentencing, it is respectfully submitted that it will be this Honorable Court's duty to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing as set forth in 18 U.S.C. §3553(a)(2)(A)-(D). Such purposes of sentencing include promoting respect for the law, which incorporates providing just punishment in light of the seriousness of the offense; affording adequate deterrence; protecting the public from further crimes by Patterson; and providing Patterson with any needed rehabilitation and treatment. 18 U.S.C. §3553 (2016).

When applying the need to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the matter *sub judice*, it is apparent that a sentence nearer the statutory minimum of ten (10) years is sufficient to achieve the sentencing goals outlined in 18 U.S.C. §3553(a).

6

Patterson has entered a plea to one (1) count of Transporting a Minor to Engage in Sexual Activity in violation of 18 U.S.C. §2423(a), which carries a statutory minimum term of imprisonment of not less than ten (10) years. Few people, including Patterson, would be unaffected by the prospect of spending a decade or more in prison even without having any prior criminal convictions. At minimum, upon release, Patterson will be very close to seventy (70) years old and will have spent all of his retirement years in prison. As such, there can be no doubt that even the minimum sentence of ten (10) years reflects on just how serious this crime truly is.

Further, the minimum ten (10) year sentence is slightly greater than the minimum sentence Patterson would have received had he been prosecuted in North Carolina state court for this charge. The most serious state crime for which Patterson could have been charged would be, upon belief, First Degree Sexual Exploitation of a Minor. N.C.G.S. §14-190.16. That charge is a Class C felony. Under North Carolina sentencing, with no criminal convictions, Patterson would have been categorized as a criminal history record level 1. Patterson's minimum sentence, in the presumptive range, could have been as little as 73 months. Of course, Patterson's maximum sentence in state court, in the presumptive range, could have been no more than 148 months, yet Patterson would have been released up to 60 months early for Post Release Supervision. N.C.G.S. §15A-1368.2.

The state court sentence range, which is not binding on this Honorable Court, does, however, illustrate that a sentence slightly above the mandatory minimum of ten (10) years adequately promotes respect for the law and provides just punishment for both the State of North Carolina and the United States.

7

**b.    To afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant;**

And while the need to deter crimes involving children is great, empirical research indicates that first time offenders generally pose the lowest risk of recidivism.   See generally, U.S. Sent. Comm'n, *Recidivism Among Federal Offenders: A Comprehensive Overview,* at 18-24 (2016). (Relevant portions of the Overview are attached hereto as Exhibit A).  Moreover, the same research shows that older offenders are at lower risk for reoffending. Id. Patterson, a man with no prior criminal history and who, at sentencing will be 58 and at release could be no less than 68 years old, poses the lowest recidivism rate and lowest reoffender rate that the study found. Id.  Thus, a sentence at or slightly above the statutory minimum of ten (10) years for Patterson, an elderly first-time offender, provides adequate deterrence and protection to the public.  In addition, the inevitable negative ramifications for his conduct - a felony conviction on his record, registration as a sex-offender, loss of his employment and the potential for lifetime supervision - furthers any needed deterrence to criminal conduct and certainly offers significant extra protection to the public from any future crimes.

And although Patterson is not likely to commit any additional crimes, even the statutory minimum of ten (10) years is sufficient to hinder recidivisms on his part.

**c.    To provide Defendant with any needed treatment or training.**

While Patterson is not in need of any additional educational or vocational training, he will take advantage of any treatment or therapy which could contribute to combating any chance of recidivism.  One study, as recounted by the Center for Sex Offender Management, found that there is an 8% reduction in the recidivism rate for offenders who participate in sex offender specific treatment.  See generally, Center for

Sex Offender Management, *Myths and Facts About Sex Offenders*, (Aug. 2000), found at http://www.csom.org/pubs/mythsfacts.pdf.  Certainly, Patterson can enroll, complete and follow up with any offered sex offender specific treatment during a sentence slightly above the minimum ten (10) year sentence.

### 3.    Types of sentences available

Patterson, pursuant to his plea agreement, understands that he agreed to plead guilty to a crime with a base offense level of 28 along with a two point enhancement. However, Patterson reserved the right to seek a departure from the "applicable guideline range" (U.S.S.G. §5C1.1).  Plea Agreement, ¶8.  It is Patterson's intent to request the Court sentence him to a term of imprisonment slightly more than the ten (10) year mandatory minimum required under 18 U.S.C §2423(a).

### 4.    The applicable advisory Guidelines range

The applicable term of incarceration for a violation of 18 U.S.C. § 2423(a) is a minimum term of ten (10) years.  The Presentence Investigation Report ("PSIR") calculates Patterson's final offense level as 37, PSIR ¶45, and assigns Patterson to criminal history category I, PSIR ¶49, resulting in a sentencing range of 210-262.  The PSIR calculated Patterson's offense level as follows:

| | |
|---|---|
| Base offense level pursuant to §2G1.3(a)(3) | 28 |
| Minors in care/custody of defendant §2G1.3(b)(1)(B) | +2 |
| Defendant unduly influence the minor §2G1.3(b)(2)(B) | +2 |
| Offense involved more than one minor §2G1.3(d)(1) | +3 |
| Repeat and dangerous sex offender enhancement §4B1.5(b) | +5 |
| Acceptance of responsibility | -3 |

9

Patterson objects to the three-level enhancement as a result of the application of Guideline §3D1.4 as well as the five-level enhancement as a result of the application of Guideline §4B1.5(b).

> **a.     Objection to the three-level enhancement as a result of the application of Guideline §3D1.4**

The PSIR indicates that the instant offense involved at least three known minors with the same conduct occurring in each case, thereby making a 3-level increase applicable under Guideline §2G1.3(d)(1).

Guideline §2G1.3(d)(1) provides that if the offense involves more than one minor, Chapter 3, Part D shall be applied as if the persuasion, enticement, corrosion, travel or transportation to engage in prohibited sexual conduct of each victim had been contained in a separate count of conviction.  U.S.S.G. §2G1.3(d)(1).  Chapter 3, Part D, dealing with multiple counts, allows for an increase in the offense level after grouping together closely related counts into "Groups", categorizing the Groups as "Units" and then counting the number of Units.  U.S.S.G Chapter 3, Part D –Multiple Counts, Introductory Commentary.  The offense level is correspondingly increased based upon the specific number of additional Units.  U.S.S.G. §3D1.4.  However, the PSIR fails to consider that Chapter 3, Part D requires the grouping of closely related counts to be considered a single Unit when the multiple counts embody conduct that is treated as a specific offense characteristic.  U.S.S.G §3D1.2(c).

Specifically, Guideline §3D1.2 states that counts involving substantially the same harm **shall** be grouped together into a single Group. U.S.S.G. §3D1.2 (emphasis added).  According to the guideline, counts involve "substantially the same harm" when

one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts. U.S.S.G. §3D1.2(c).

As part of the plea agreement, Patterson pled guilty to one count of transportation of minors to engage in sexual activity in violation of 18 USC §2423(a). This single count involved three minor victims. And whereas Guideline §2G1.3(d)(1) does allow for a single offense involving more than one minor to be counted as separate convictions, the use of the word **shall** in Guideline §3D1.2(c) mandates that closely related counts must be group together. (See generally, <u>United States v. Monsanto</u>, 491 U.S. 600, 607 (1989) (where a criminal statute provides that persons convicted of the crime "shall forfeit . . . any property", Congress could not have chosen stronger words to express its intent that forfeiture be mandatory.)) Accordingly, these closely related counts are mandated by Congress to be grouped together.

It is understood, however, that Application Note 6 of Guideline §2G1.3(d)(1) appears to state a different standard. Specifically, the Application Note states that multiple counts involving more than one minor are not to be grouped together under §3D1.2. U.S.S.G. §3D1.2, Application Note 6. It would then appear that this Application Note directly conflicts with Guideline §3D1.2(c)'s mandate to group together closely related counts. And when an application note clashes with the guideline, the guideline prevails. <u>United States v. McMillian</u>, 777 F.3D 444, 449-50 (7th Cir. 2015). See also, <u>United States v. Hill</u>, 783 F.3D 842, 846 (11th Cir. 2015)(Because the application note is inconsistent with the plain language of U.S.S.G. §2G1.3(b)(3)(B), the plain language of the guideline controls.); <u>United States v. Pringler</u>, 765 F.3D 455 (5th Cir. 2014)([W]e hold

that the commentary in application note 4 is inconsistent with the guideline and we therefore follow the plain language of the Guideline alone.)

Further, the Commentary to subsection §3D1.2(c) supports this position by stating that the grouping under this subsection prevents double counting of offensive behavior. Particular to this case, two specific offense characteristics apply to each offense involving each minor, namely that the minors were in the custody care and control of the Patterson and their participation was unduly influenced by him. U.S.S.G. §2G1.3(b)(1-2). Each of these specific offense characteristics requires a 2-level increase. If grouping of each of these offenses is not permitted, than impermissible double counting occurs.

Accordingly, this court should not enhance Patterson's offense level under U.S.S.G §3D1.4.

> **b.      Objection to the five-level enhancement under U.S.S.G. §4B1.5(b) as the facts do not amount to a pattern of activity and such application would amount to double counting.**
>
> > **i.      The PSIR states that a 5-level increase applies to Patterson because he engaged in a pattern of activity involving prohibited sexual conduct.**

Guideline §4B1.5(b) provides an enhancement in any case in which the defendant's instant offense of conviction is a covered sex crime, neither §4B1.1 nor subsection (a) of this guideline applies and the defendant engaged in a pattern of activity involving prohibited sexual conduct. Patterson does not dispute that the crime to which he has pled guilty to on February 6th, 2017 is a covered sex crime nor does he dispute that neither §4B1.1 nor 4B1.5(a) apply in this scenario. However, Patterson does dispute that he has engaged in a pattern of activity involving prohibited sexual conduct.

12

The commentary to §4B1.5 indicates that **prohibited sexual conduct** means among other things any offense described in 18 U.S.C. §2426(b)(1)(A). Again, it is not **prohibited sexual conduct** that Patterson disputes, but that he engaged in a **pattern of activity**. A **pattern of activity** is determined to have occurred if, on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor. U.S.S.G. §4B1.5, *Application Notes 4(B)(i)*.

In order for this 5-level increase to apply, this court must determine whether the facts stated in the PSIR and Patterson's own statement for acceptance of responsibility amount to a **pattern of activity** as required under Guideline §4B1.5(b). In order to make this determination, it is necessary to parse out the specific provisions of Guideline §4B1.5(b) and substitute the appropriate definition for the particular words contained in such subsection. When doing so Guideline §4B1.5(b) reads in pertinent part as follows:

> In any case in which the defendant's instant offense of conviction is a covered sex crime, neither §4B1.1 nor subsection (a) of this guideline applies, **AND** defendant engaged in a pattern of activity (i.e. on at least two separate occasions) involving prohibited sexual conduct, the offense level shall be plus 5. U.S.S.G. §4B1.5(b) (emphasis added).

As this court is aware, when elements of a statute are separated by a conjunctive, such as **AND**, each element should be interpreted as a distinct requirement. For sure, the Supreme Court for decades has adhered to its conjunctive formulation, giving no indication that separate elements maybe read out of the equation as expendable redundancy when separated by a conjunctive. See generally, <u>Michigan v. Long</u>, 463 U.S. 1032 (1983).

Thus, when reading the provision of §4B1.5(b) it becomes clear that two distinct elements must occur prior to a 5-level increase becoming applicable. Those elements

are the instant offense of conviction is a covered sex crime and that on at least two separate occasions prohibited sexual conduct occurred. The conjunctive ***AND*** becomes important when determining the application of the term **two separate occasions**. The question then becomes – two occasions **separate** from what? It is important question because this Court must determine whether the drafters of the guidelines were referring to two occasions separate from the instant offense or just two occasions separate from each other.

Each interpretation is plausible; however, depending on which interpretation is used, the results could be drastic. In the instant case, a 5-level enhance could potentially take the mandatory minimum sentence of 120 month to 210 month, approximately a 75% increase. But where there are two equally plausible interpretations of a criminal statute, the defendant is entitled to the benefit of the more lenient one. The tie must go to the defendant. <u>United States v Santos</u>, 553 U.S. 507, 514(2008).

However, it is noted that the commentary to §4B1.5(b) does state that an occasion of prohibited sexual conduct may be considered for purposes of this subsection without regard to whether the occasion occurred during the course of the instant offense or resulted in a conviction for the conduct that occurred on that occasion. U.S.S.G. §4B1.5, *Application Notes 4(B)(ii)*. But even this doesn't clear up the confusion. If the drafters actually intended for the fact basis for the instant offense to count as one of the ***separate*** occasions, such language could have easily been incorporated into the Application Note. Again, there are potentially two distinct interpretations of the Application Note. As previously stated, when there are two equally

plausible interpretations, the defendant is entitled to the benefit of the more lenient one. Id.

Accordingly, this court should not enhance Patterson's offense level under §4B1.5(b).

### ii. Application of the 5-level enhancement would be impermissible double counting.

Patterson also disputes the application of the 5-level enhancement as impermissible "double counting." Double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been accounted for by application of another part of the Guidelines. United States v. Reevey, 364 F.3d 151, 158 (4th Cir. 2004) quoting, United States v. Rohwedder, 243 F.3[rd] 423, 426-27 (8th Cir. 2001). If the Court disagrees with Patterson's "Grouping Argument" in Section II.A.4.a. above, Patterson contends that the 5-level enhancement of Guidelines §4B1.5 increases his punishment for harm that had already been enhanced pursuant to Guidelines §2G1.3(d)(1).

Guideline §2G1.3(d)(1) requires that each victim be treated for sentencing purposes as if contained in a separate count, even if the indictment charges only one count. The offense level for each count is calculated and the normal grouping rules are applied for multiple-count convictions, resulting in an offense level enhancement. A "count" is "used…to signify the several parts of an indictment, each charging a **distinct offense**." *Black's Law Dictionary,* Abridged 6th Edition (West Publishing Co. 1991) (emphasis added). Put differently, a count describes an event, and an event is a unit containing elements of *identity, action, location and time.*

Under the PSIR analysis, each of Patterson's three minor participants, by virtue of Guideline §2G1.3(d)(1) have been accorded their own count, containing all of the elements and conduct related to the crime, namely *identity, action, location and time.* Points are assessed for each count, taking into account all of these elements and all of the guidelines enhancements separately applicable. Again, if the Court disagrees with Patterson's "Grouping Argument" stated in Section II.A.4.a. above, these three counts cannot be grouped according to the Guidelines and Patterson's sentencing range would be enhanced by three levels. The different harm ascribed to U.S.S.G. §4B1.5(b), (i.e. multiple occasions) has already been fully accounted for in the application of §2G1.3(d)(1). Consequently, the application of both § 2G1.3(d)(1) and § 4B1.5 is indeed double counting.

For all the above reasons, this court should not apply the 5-level enhancement.

### 5. Pertinent Policy Statements

Congress established the Sentencing Commission for the purpose of formulating and constantly refining the national sentencing standards. Kimbrough v. United States, 128 S.Ct. 558, 570 (2007). In fulfillment of its role, the Sentencing Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." Id. at 574.

The Guidelines function to advance sentencing reform objectives such as reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparence of punishment. See United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing* at 11-12 (Nov. 2004). The Sentencing Commission relied upon past practices and recidivism rates in formulating offense levels for each crime, with said offense levels corresponding to a

particular recommended sentencing range. As such, the Guidelines typically represent a reasonable estimation of a fair sentencing range.

Public policy and statutory mandatory minimum sentences have caused the Sentencing Commission to depart from precedent practices in setting offense levels for such crimes as fraud, drug trafficking, and child crimes and sexual offenses. Kimbrough, 128 S.Ct. at 567. And recently, on December 19th 2016, the United States sentencing commission published proposed amendments to sentencing guidelines policy statements and commentary. See generally, *Proposed 2017 Amendments to the Federal Sentencing Guidelines*, found at https://www.ussc.gov/guidelines/amendments.

One such proposed amendment dealt with Chapter 4 (criminal history and criminal livelihood) and included setting out different options for a new guideline for first offenders under U.S.S.G. §4C1.1. As part of the proposed amendment, the Sentencing Commission analyzed recidivism data for first offenders and found that generally first offenders pose the lowest risk of recidivism. The new proposed Chapter 4 guideline would apply if the defendant did not receive any criminal history points under the rules contained in Chapter 4, Part A and the defendant has no prior convictions of any kind. The Sentencing Commission proposed two options: option one provides a decrease of one level from the offense level determined under Chapter 2 and 3; option 2 provides a decrease of one level if the offense level determined under Chapter 2 and 3 is level 16 or greater.

Either way if the new proposed amendments are adopted, Patterson would potentially be able to reduce his offense level by 1. And a 1-level reduction is significant when considering any base offense level above 30. By way of example, a 1-level reduction of a base offense level of 35 to 34 would reduce a minimum sentence by

some 17 months. A 17 month reduction, when looking at serving more than a decade in prison, is a very significant amount of time.

### 6. The need to avoid unwarranted sentencing disparities

Moreover, case law clearly supports a sentence lower than the PSIR's calculated Guideline range for someone similarly situated to Patterson. In United States v. Fugit, 703 F.3d 248 (4th Cir. 2012), the defendant was charged with and pled guilty to one count of distributing child pornography and a second count of coercion and enticement of a minor to engage in sexual activity. At issue was the interpretation of "sexual activity". However, relevant to this matter was the District Court's imposition of a 70 month sentence for acts which amounted to the defendant encouraging two minors to engage in inappropriate sexual activity and, specific to one minor, for knowingly persuading and inducing that minor to masturbate and take her clothes off. Additionally, and different from this case, the presentence investigative report revealed that the defendant had participated in internet chats with 129 individuals who appeared to have been children. During these chats the defendant often proceeded to engage the children in conversations involving inappropriate sexual comments. Id. at 251-252. And whereas the statute violated by Fugit is not exactly identical to the statute at issue in the case at bar, the facts of each case are similar and would warrant a similar sentence. If, however, the court imposes a sentence within the guideline range as suggested in the PSIR, the result would be an extreme sentence disparity between similar relevant conduct.

Further, in the case of United States v. Grubbs, the Fourth Circuit Court of Appeals reviewed a District Court sentence related to Grubbs' plea of guilty to a 12-count bill of indictment with six charges filed under 18 USC 2423(a). Grubbs, 585 F.3d

793 (4th Cir. 2009). Grubbs was a language arts teacher and coach at a public Middle School in North Carolina at the time of these acts. Over a period of years Grubbs sexually molested young teenagers who recounted that most of the assaults occurred regularly and on multiple occasions over months or years. The sexual assaults included kissing, mutual masturbation and oral sex. With numerous victims and zero criminal history points and a 3-level adjustment for acceptance of responsibility, Grubbs' base offense level was calculated as a 34. Id. at 797. The District Court acknowledged that the recommended guideline range was 151 - 188 months of imprisonment. Id. However, the District Court enhanced Grubbs' sentence under Guideline §5K2.0 and §5K2.3 to 240 months over concerns that the guideline calculation did not reflect the true nature of the defendant's conduct. Id. at 795.

The Fourth Circuit, however, expressed some concern that the District Court may have erred in relying on those non-offense-base factors. Id. at 804. Notwithstanding that, the Fourth Circuit upheld the resulting sentence as procedurally reasonable. Id.

In comparison to the case at bar, Patterson's base offense level has been calculated as a 37 when there has been no allegations of no physical contact and or any type of oral sex. Yet the base offense level for Grubbs', with all the allegations of touching and oral sex was significantly less. Without the enhancement of the District Court in the Grubbs case, that defendant, who committed sexual acts on numerous minor victims, was in a position to receive a sentence significantly lower than Patterson.

And in the case of United States v. Taylor, supra, the Seventh Circuit had to review a guilty verdict of a defendant masturbating in front of his webcam for, what the defendant believed to be, a 13 year old girl and by inviting the girl to masturbate. The Seventh Circuit determined that such actions did not violate 18 U.S.C. §2422(b), a

19

statute similar but not identical to the one Patterson is charged with violating. That Court's determination was based on a narrow interpretation of sexual activity, as used in 18 U.S.C. §2422(b) and §2423(a).

Thus, to avoid a sentence so disproportionate to other defendants similarly situated to Patterson, Patterson would request this Honorable Court impose a sentence slightly above the statutory minimum of ten (10) years.

### 7. Restitution

Patterson is aware that the PSIR list restitution to the parents of two of the minors involved in this case. <u>PSIR</u> ¶78. Patterson objects to the restitution only on the basis that Patterson in unaware of how the total amount of restitution was calculated for each of the parents and what is actually being reimbursed.

### B. Application of Guidelines in Imposing a Sentence

In sentencing Patterson, this Court must impose a sentence in compliance with 18 U.S.C §3553(a)(4) unless the Court finds that there exists mitigating circumstances that have been specifically identified as reason for a downward departure, have not been taken into account in formulating the sentencing guideline and that should result in a sentence different from that described. 18 U.S.C. §3553(b)(2).

### 1. Age and Physical Condition as stated reasons for downward departure

Although at 58 Patterson is by no means old, his medical condition of Polycythemia Vera, has been taking a significant toll on him during his incarceration. This medical condition is a slow-growing blood cancer in which one's bone marrow makes too many red blood cells. These excess cells thicken the blood, slowing its flow. Part of the treatment is to have regular blood draws. As stated in the attached letter of

support from John Richey, by not having regular treatment for his medical condition, Patterson has gone from a strong, healthy and happy man to an old looking, weak, heartbroken older man. (See letter of support of John Richey (Exhibit B)).

Other family members who have been visiting Patterson regularly during his incarceration have noticed a significant decline in the man who was once a strong, healthy and vibrant man. In fact, it has been noted that Patterson has lost over 40 pounds since being incarcerated and has suffered through his wife's diagnosis with cancer and ultimate death. (See support letters of John Erick Richey (Exhibit C), Faith Richey (Exhibit D) and Exhibit B.) It is contended by Patterson, that this mental anxiety together with his decreasing physical condition and appearance meet the stated reasons for a downward departure under U.S.S.G. §5H1.1 and §5H1.4.

### 2. Mr. Patterson has a strong support system to assist him upon his release.

District Courts sentencing in the lower end of the calculated Guidelines range have placed substantial importance on a defendant's strong social support system. United States v. Wachowiak, 496 F.3d 744 (7th Cir. 2007) (explaining that "[w]here the Court has found strong social support from family, friends, and others the Court has deemed a lower sentence appropriate").

In anticipation of sentencing, Patterson contacted family members and friends to ask that they write letters of support on his behalf. These letters detail Patterson's character, his acceptance of responsibility in this matter, and the crisis he has endured while being in custody.

Again, Patterson is the middle of three siblings with an older brother, Barry Patterson, and a younger sister, Faith (Patterson) Richey. As a young man, Patterson

was an Eagle Scout who attended and graduated from the Citadel, Military College. (See Exhibits B & D.) Thereafter, he began his career with CSX Transportation and remained gainfully employed for over 30 years. He was married in 1983 to Diann Patterson and was still married when she passed in 2016. (See Exhibit D.)

Both siblings describe Patterson as a kind and caring person, assisting family members when needed. (See support letters of Barry Patterson (Exhibit E) and Exhibit D.) Patterson's nephew, John Erick Richey, recalls that Patterson was there for him at each one of his milestones, to wit, the day he was born, birthdays, holiday, graduations, and marriage. His nephew describes Patterson as a person he looks up to and admires. And, although his nephew acknowledges Patterson's mistakes, he describes Patterson as a man with an improved relationship with God and someone who hopes to one day be reunited with his family and see his wife's grave. (See Exhibit C.)

During Patterson's life, he continued to develop into a selfless and kind individual. He is even described by a family friend, Andrea Evans, as one who would "literally give the shirt off his back to anyone in need." Ms. Evans came to know Patterson through Patterson's niece and nephew. Through the years she came to know him as a "family man", a "good man". She speaks highly of all he did for his family. She describes the last time she saw Patterson, at Patterson's wife's funeral, as a changed man, one who didn't shy away from his mistakes and who has been working hard to make "positive changes in his life". (See letter of support from Andrea Evans (Exhibit F))

But it is Patterson's brother-in-law of 35 years, John Richey, who beautifully describes Patterson. Mr. Richey reflects on all the good that Patterson has done for the family, from attending the milestones of his own children to offering financial support

when any family member was in need and touts Patterson as a very caring and loving person. Further, Mr. Richey recalls all the good Patterson did for the family, even when there was not a need. He talks of Patterson treating his children as if they were Patterson's own, showing them the same support and love that a parent would. He unequivocally states that the entire family has been supporting Patterson through this and "will continue to support him" because as he put it, "this man has been the Rock in our family." (See Exhibit B.)

III. **CONCLUSION**

For the foregoing reason, Patterson respectfully requests that this Honorable Court impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing as set forth in 18 U.S.C. §3553 and impose a sentence nearer the statutory minimum of ten (10) years.

This the 22nd day of August, 2017.

Respectfully submitted,

/s/ Brian D. Gulden
Brian D. Gulden
N.C. Bar No. 29243
Attorney for Defendant
Patla, Straus, Robinson & Moore, P.A.
Post Office Box 7625
Asheville, North Carolina 28802
828/255-7641
bdg@psrmlaw.com

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing has been served electronically this 22nd day of August, 2017 to David Andrew Thornloe, Assistant United States Attorney, United States Attorney's Office, 207 U.S. Courthouse, 100 Otis Street, Asheville, North Carolina 28801.


/s/  Brian D. Gulden
Brian D. Gulden
Attorney for Defendant

## <u>LIST OF EXHIBITS</u>

Exhibit A:    Relevant portions of U.S. Sent. Comm'n, "Recidivism Among

Federal Offenders: A Comprehensive Overview"

Exhibit B:    Letter of Support from John Richey

Exhibit C:    Letter of Support from John Erick Richey

Exhibit D:    Letter of Support from Faith Richey

Exhibit E:    Letter of Support from Barry Patterson

Exhibit F:    Letter of Support from Andrea Evans

25