```
 1              UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF NORTH CAROLINA
 2                    (Asheville Division)

 3

 4   --------------------------x
     UNITED STATES OF AMERICA,  :
 5              Plaintiff,      :
                                :
 6                              :
     vs                        :Criminal Action:1:16-CV-67
 7                              :
     JOSEPH HAROLD PATTERSON,    :
 8                              :
                Defendant.      :
 9   --------------------------x

10

11                             Wednesday, August 30, 2017
                               Asheville, North Carolina
12

13
          The above-entitled action came on for a Sentencing
14   Hearing Proceeding before the HONORABLE MAX O. COGBURN,
     Jr., United States District Judge, in Courtroom 1
15   commencing at 2:05 p.m.

16
             APPEARANCES:
17           On behalf of the Plaintiff:
             DAVID A. THORNELOE, Esquire
18           Office of the U.S. Attorney - WDNC
             233 U.S. Courthouse Building
19           100 Otis Street
             Asheville, North Carolina  28801
20
             On behalf of the Defendant:
21           BRIAN D. GULDEN, Esquire
             Patla, Strauss, Robinson & Moore, P.A.
22           Post Office Box 7625
             Asheville, North Carolina  28802
23

24
     Tracy Rae Dunlap, RMR, CRR            828.771.7217
25   Official Court Reporter
```

1                          **I N D E X**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                                                    <u>Page</u>
25  Reporter's Certificate.......................150

**P R O C E E D I N G S**

1
2        THE COURT:  We'll call the case of United States
3   versus Joseph Harold Patterson.  Is the defendant ready?
4        MR.  GULDEN:  The defendant's ready, Your Honor.
5        THE COURT:  Is the government ready?
6        MR.  THORNELOE:  Yes, Your Honor.
7        THE COURT:  All right.  Mr.  Patterson, if you
8   would please stand up.  Do you recall appearing before a
9   United States magistrate judge for the purpose of
10  entering a plea of guilty in this case?
11       THE DEFENDANT:  Yes, Your Honor.
12       THE COURT:  Do you remember being placed under
13  oath at that time?
14       THE DEFENDANT:  Yes, Your Honor.
15       THE COURT:  Do you remember answering the
16  questions of the judge?
17       THE DEFENDANT:  Yes, Your Honor.
18       THE COURT:  Do you remember signing a plea
19  transcript form indicating the answers you gave the judge
20  that day were true and accurate to the best of your
21  knowledge?
22       THE DEFENDANT:  Yes, Your Honor.
23       THE COURT:  Did you tell the judge the truth that
24  day?
25       THE DEFENDANT:  I did, Your Honor.

1          THE COURT:  If I were to ask you the same

2     questions that are on that transcript form, would your

3     answers be the same?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  All right.  Thank you.

6          Counsel, do you believe your client understood

7     fully the questions the magistrate judge asked at the

8     Rule 11 hearing?

9          MR.  GULDEN:  I believe he understood each

10    question, Your Honor.

11         THE COURT:  All right.  Thank you.

12         Mr.  Patterson, did you answer the questions the

13    way you did, and are you going forward with your guilty

14    plea today, because you did commit the crime you're

15    pleading guilty to?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Based upon those representations, and

18    the answers given by the defendant at the Rule 11 hearing

19    before the magistrate judge, the Court affirms the

20    judge's finding that the defendant's plea was knowingly

21    and voluntarily made.  The Court also affirms the judge's

22    finding that the defendant understood the charges, the

23    potential penalties, and the consequences of his plea.

24    Accordingly, the Court affirms the magistrate judge's

25    acceptance of the defendant's plea of guilty at the Rule

1  11 hearing and accepts the same here today.

2       Mr.  Thorneloe, would the government have a

3  factual basis?

4       MR.  THORNELOE:  Yes, Your Honor.  The government

5  would ask the Court to accept the factual basis as stated

6  in the presentence report.

7       THE COURT:  Thank you.

8       What says the defense?

9       MR.  GULDEN:  No objection to the Court accepting

10  that factual basis that's already been previously

11  admitted.

12       THE COURT:  Do you stipulate, then, that I can do

13  so today?

14       MR.  GULDEN:  We do so stipulate, Your Honor.

15       THE COURT:  Thank you.  Based upon that

16  stipulation and the offense conduct, as set forth in the

17  presentence report, the defendant's plea of guilty before

18  the magistrate judge, and the defendant's admissions in

19  open court today, the Court finds there is a factual

20  basis for the entry of a plea of guilty and enters a

21  verdict of and judgment of guilty in this case.

22       Mr.  Patterson, your case was referred to the

23  United States Probation Office for a presentence

24  investigation and preparation of a presentence report.

25  The Court has now received that report.  Have you read

1  that report?

2          THE DEFENDANT:  Yes, Your Honor, I remember

3  reading it.

4          THE COURT:  Okay.  Let me ask you again then:

5  Have you read that report?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Have you gone over that report with

8  your attorney?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Do you now believe you understand the

11  contents of that report?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  All right.  Thank you.

14          Counsel, have you gone over that report with your

15  client and are you satisfied that he understands the

16  contents of that report?

17          MR.  GULDEN:  I have gone over the report with my

18  client.  I believe he understands the contents of that

19  report.

20          THE COURT:  All right.  Thank you.

21          Are there any objections to the presentence report

22  which remain outstanding today?

23          MR.  GULDEN:  I believe there are a couple of

24  objections that we made, Your Honor.  We had submitted

25  our objections.  It was filed May 5th 2017 as document

1   24.  At this point, Your Honor, there may be one

2   additional objection that may require -- I don't know.

3   We listed them out as requiring Court determination, but

4   I feel I need to get one additional objection on the

5   record.

6        THE COURT:  All right.  Let's go through them.  We

7   have -- it looks like you have several.  You have

8   objection -- one is about spelling.  Objection two is --

9        MR.  GULDEN:  If I may, Your Honor, on those.

10        THE COURT:  Yeah.

11        MR.  GULDEN:  One, the comments or corrections

12   that do not require Court determination.  I made those

13   objections -- basically, they were spelling, improper

14   grammar.  Probation Officer Burton replied to all of

15   those indicating that in certain instances she took

16   verbatim what was told to her, or cut and pasted certain

17   information that was copied directly from a victim's

18   statement.  And so there was no corrections that was

19   needed.

20        On page two of eight there is a heading called,

21   "Objections that require Court Consideration/

22   Determination."  And on that, it starts with paragraph

23   one, goes to two, three, four, and five.  Paragraph six,

24   Probation Officer Burton amended.  And so it would be

25   just be objections one through five.  Objections four and

1  five are also part of the sentencing memorandum and what

2  would be my argument to the Court.  I'm happy to do that

3  now, at the objections.  And the -- there is one

4  additional objection that I would like to add.

5       THE COURT:  All right.  Why don't we go over them

6  one at a time?  You pick which one you want to go over

7  first and which paragraph those are added in here.

8       MR.  GULDEN:  I would start with paragraph one.

9  Paragraph -- objection one, Your Honor --

10      THE COURT:  All right.  What paragraph does that

11 apply to in the presentence report?

12      MR.  GULDEN:  Page three, paragraph two.

13      THE COURT:  Okay.  What's your objection?

14      MR.  GULDEN:  The objection is in one of the

15 sentences that's about two-thirds of the way down.  It

16 says, "The defendant agrees to pay full restitution

17 regardless of the resulting loss amount to all victims

18 directly or indirectly harmed by his conduct, regardless

19 of whether such conduct constitutes an offense under 18,

20 U.S.C.," and it lists some statutes.  My objection to

21 that was that we would request that it would be relevant

22 conduct such that he would pay full restitution

23 regardless of the resulting loss amount to all victims

24 directly or indirectly harmed by his relevant conduct.

25      THE COURT:  That's pretty much what it says, isn't

1  it?  It says the parties agree that the defendant agrees

2  to pay full restitution regardless of the resulting loss

3  amount to all victims directly or indirectly harmed by

4  defendant's relevant conduct including conduct pertaining

5  to any dismissed counts or uncharged conduct, if it's

6  relevant.

7       MR.  GULDEN:  It's relevant conduct.  Mine didn't

8  say that, Your Honor.  If that does say it in yours then

9  I apologize.

10      THE COURT:  It says -- yeah.  In paragraph two it

11  says "relevant conduct."

12      MR.  GULDEN:  Your Honor, I apologize.

13      THE COURT:  Okay.

14      MR.  GULDEN:  So we'll go on to objection number

15  two.

16      Thank you, Ms. Burton.

17      THE COURT:  What paragraph is that?

18      MR.  GULDEN:  That's page five, paragraph 15.

19      THE COURT:  Okay.  What do you not like about that

20  paragraph?

21      MR.  GULDEN:  In that very first sentence, Your

22  Honor, it says, "In addition to the factual basis, it is

23  noted that Patterson, while masturbating with the CVs,

24  told them never to tell anyone."

25      THE COURT:  That's not in there.

1          MR.  GULDEN:  Your Honor, I did not get any

2   information that these were changed.  Mr.  Thorneloe just

3   informed me that that one was changed also.

4          If I can just confer with Mr.  Thorneloe.

5                 (Discussion held off the record between

6                   Mr.  Thorneloe and Mr.  Gulden.)

7                         (Back on the record.)

8          MR.  GULDEN:  Your Honor, number three, which is

9   page six, paragraph 16.

10         THE COURT:  Okay.

11         THE COURT:  What do we not like about that --

12         MR.  GULDEN:  What I have is -- beginning with the

13   portion of the paragraph that begins in 2015, which is

14   the very -- almost the very last sentence -- second to

15   the last sentence in paragraph 16. "In 2015, Patterson

16   encouraged four additional CVs to masturbate as a group

17   after showing the minors pornography on a cell phone.

18   Patterson encouraged the minors to masturbate together in

19   the gymnasium, which is located in the Christian Activity

20   Center, which is part of the Boulevard Baptist Church on

21   Ridgecrest Avenue.  Patterson would enter the bathroom

22   while this act was being performed."

23         I've objected to it on two reasons.  That

24   particular factual allegation is also contained in

25   paragraph 13.  So we would object to the insinuation, if

1   there is one, that that sounds like this is an additional

2   relevant conduct that hasn't been accounted for, which we

3   think in paragraph 13 it already has been, in which it

4   says almost exactly the same thing.

5        And, then, additionally, the factual basis which

6   was agreed to by the defendant and filed with the Court.

7   The recitation of the facts includes a statement that

8   Patterson stood by the door and not that he had entered

9   the bathroom.  So we would ask the Court for

10  consideration of not including that he would enter the

11  bathroom in the factual basis, only that he stood by the

12  door, and the Court to understand that it's not a

13  separate -- it's not a separate incident for which it's

14  not been accounted for already because it has in

15  paragraph 13.

16       THE COURT:  All right.  Mr.  Thorneloe, what says

17  the government?

18       MR.  THORNELOE:  Your Honor, I agree that this is

19  a slightly different wording of the facts contained

20  within paragraph 13.  So that you have a few more

21  details.  The probation officer looked to some different

22  items of discovery, and this has been reported from

23  multiple angles.  As you well know, when different people

24  report the same event, it sounds a little different.

25       THE COURT:  Let's go ahead and note that the

1  actions in paragraph 16 and in paragraph -- what's the

2  later one?

3       MR.  GULDEN:  13.

4       THE COURT:  13.  That in 16 and 13 that just --

5  note at the bottom of each that this activity was also

6  reported in paragraph -- in 13 you put in 16, and in 16

7  you put in paragraph 13.  That will take care of it.

8  Anybody reading it would know it was the same conduct and

9  we wouldn't need to make any other changes.  Okay?

10      MR.  GULDEN:  Thank you, Your Honor.

11      The one additional one, which I did not include in

12  the document that was filed, would be on page 15,

13  paragraph 35.

14      THE COURT:  Okay.

15      MR.  GULDEN:  My objection is to the last

16  sentence.  In paragraph 35, in the specific offense

17  characteristics, the last sentence reads:  "The

18  investigation revealed that Patterson was the only adult

19  supervising the three minor boys when he made at least

20  three trips to the Smokemont campground.  We object to

21  that.  The factual basis that was stipulated to was that

22  there were two minor boys on a camp trip that occurred in

23  2010.  And the only time three minor boys were present

24  was a camping trip to Smokemont in 2011.  I may have said

25  that wrong when I look at it.  Two boys in 2010; three

minor boys in 2011.  There's been no allegations of
anyone attending a third camping trip.

The discovery shows that he checked in to
Smokemont campground on three separate occasions, but on
one of the occasions there's been no allegations, there's
been no statements, there's been no factual basis to even
consider that there was anybody with him at that time.
So if the Court, in reading that, were to think that this
incident happened on three occasions with three minor
boys, we would object to that.  But we have stipulated
two minor boys were with him at a camping trip in 2010,
and three minor boys were with him on a camping trip in
2011.

THE COURT:  Mr.  Thorneloe.

MR.  THORNELOE:  Your Honor, Mr.  Gulden is
correct that the 2009 trip that is referenced in
paragraph six doesn't give any information about whether
or not any minor boys accompanied him.  I'm not saying
they didn't, but we don't have that information on the
record so the Court shouldn't conclude that they did.

THE COURT:  All right.  It doesn't affect the
guideline on that.

MR.  THORNELOE:  I don't think it does affect the
guideline.

THE COURT:  It says if the defendant was a parent,

1   legal guardian of the minor, or the minor was otherwise

2   in the custody, care or supervisory control of the

3   defendant increase by two levels.  So if you just took

4   one minor trip with one minor, get the two points.  We

5   ought to make sure it's accurate.  So we ought to say the

6   only adult supervising three minor boys when he made one

7   trip to the Smokemont campground and the only adult when

8   he made a separate trip with two boys to the Smokemont

9   campground.  That would reflect what the defendant is

10  saying and the facts the government knows in this case.

11  The result is still plus two points.

12          MR.  GULDEN:  I heard the Court ask

13  Mr.  Thorneloe, the government's attorney, does it affect

14  the guidelines.  My next objection -- it's one of them,

15  which would be objection four.  But if we skip to

16  objection five, which is paragraph 15 -- strike that --

17  page 15, paragraph 42.  I would think if the

18  clarification wasn't made then, potentially, that

19  specific statement in paragraph could be used to -- for a

20  five level enhancement under sentencing guidelines 4B1.5.

21  That's one of my objections that we have made.  We've

22  contended 4B1.5 doesn't apply.  I can argue it now.

23  We've also contended that the three level enhancement

24  under 3D1.4 doesn't apply either.  So I'm happy, at the

25  Court's pleasure, to talk about it now.

1      THE COURT:  Yeah, I'll hear what you say.  I've

2  read the facts that you've agreed to, and I'll hear what

3  you say.

4      MR. GULDEN:  Thank you, Your Honor.  And I'll

5  start with the 2G1.3 sentencing, the base offense level

6  for an offense under 18, U.S.C., 2423(a), which

7  Mr. Patterson has been charged with, is a base offense

8  level 28 under subsection (b), specific offense

9  characteristics (1) and (2), the minors in the care and

10  custody of the defendant, and the participant which is --

11  I would -- which is broader than just the defendant --

12  unduly influenced a minor to engage in a prohibited

13  sexual conduct.

14      Those two, I believe, are the two two level

15  enhancements of paragraph 35 and 36.  Under subsection D,

16  the special instruction, it says if the offense involved

17  more than one minor, which we -- which the factual basis

18  supports and we agree to, Chapter 3, Part D, multiple

19  counts shall be applied.  And I'm going to -- I'm just

20  going to skip some words here -- as if the travel or

21  transportation to engage in a prohibited sexual conduct

22  of each victim had been contained in a separate count of

23  conviction.  "Shall be applied," as I've indicated in my

24  argument to the Court in my sentencing memorandum --

25  shall be applied.  The legislature, congress, can use no

1  stronger words for mandating something to happen as the
2  word "shall."

3        I cited a case, *United States v Monsanto*, where
4  the court indicated where a criminal statute provides
5  that person's convicted of the crime shall forfeit any
6  property.  Congress could not have chosen stronger words
7  to express its intent that forfeiture be mandatory.  It's
8  special instruction D which indicates that Chapter 3,
9  Part D shall apply as if the travel or transportation to
10 engage in a prohibited sexual conduct each victim be
11 contained in separate count of conviction.

12       In this instance, the indictment indicated that in
13 2011 three minor victims were part of the relevant
14 conduct of defendant.  Each one then would be as if it
15 was a separate count of conviction.  Chapter 3,  Part D
16 -- 3D1.1 indicates when a defendant has been convicted of
17 more than one count, special instruction D under 2G1.3
18 says they should be treated as separate counts.  When a
19 defendant has been convicted of more than one count the
20 Court shall -- it lists three things that the Court has
21 to do:  Group the counts resulting in conviction into
22 distinct groups of closely related counts by applying the
23 rules in 3D1.2.  The Court must also determine the
24 offense level applicable to each group by applying the
25 rules in 3D1.3.  And determine the combined offense level

applicable to all groups, taken together, by applying the rule.

When we go through the rules, 3D1.2, (c) talks about when one count -- and we treat it as we have 3 here. When one of the counts embodies conduct that is treated as a specific offense characteristic in the guidelines applicable to another count, you are supposed to group these closely related counts. The specific offense characteristic that we are talking about are (b)(1) and (2) which have already been enhanced in paragraph 35 and 36. Then you go on to 3D1.3 to determine the -- in a case of counts grouped together under 3D1.- -- strike that.

In the case of counts grouped together pursuant to 3D1.2(c), which is what I'm contending to the Court that we have, the offense level applicable to the group is the offense level determined in accordance with Chapter 2, Parts A, B and C. Chapter 2, and Parts A, B and C of Chapter 3. Under Chapter 2, determining his offense level it would be a 32 for the specific groups that are required to be -- or for the specific convictions that are required to be grouped together.

And then determining the combined offense level under 3D1.4, what you do is you count as one unit the group with the highest offense level. We have one group,

which is all three of the convictions. They shared two specific characteristics, and so we only have one group. So we -- I would contend, on behalf of my client, that 3D1.4, that there is no additional increase for the number of units because under Chapter 3, Part D, they're grouped together as one.

Under 3D1.3, the commentary application note number four specifically addresses this. Sometimes the rule specified in this section may not result in incremental punishment for additional criminal acts because of the grouping rules. I know that the government indicated that under 2G1.3, special instruction (d), it has application note number six. Application note number six, I would contend to the Court, recites the exact special instruction.

It says each minor transported or traveled to engage in prohibited sexual conduct is to be treated a as separate minor. We do that. We treat them as a separate minor. This says, consequently, multiple counts involving more than one minor are not to be grouped together. Yet the special instruction itself says they shall be grouped together. And if you follow the rule, grouping together under Chapter 3, Part D, you do not, I would contend to the Court, get additional units to count as groups and, thus, the three level enhancement would

not apply.  Because, really, what you have -- and reading
it side by side -- special instruction (d) and the
application note -- special instruction (d) says if you
have more than one minor.

The application note says this is for the purpose
of more than one minor.  Each minor transported.  This
one says that each minor that's transported to engage in
a prohibited sexual conduct shall be contained in a
separate count of conviction and the rule, Chapter 3,
Part D shall apply.  This application note says the exact
opposite.  It says the exact same language, I would
contend to the Court, but says it doesn't apply when --
and I've cited the case law and, I think, in the
government's response they agree.

When an application is contrary to a special
instruction, the application note must give way to the
special instruction.  If, as I've previously gone through
the special instruction is applied, I do not think that
3D1.4 increases the number of units by three levels.  As
a matter of fact, I think that there still is only one
group because of the specific offense characteristics.
Also, go on to say in that if you're taking the two
specific offense characteristics and increasing them by
two each -- that the defendant was in the care and
custody and undue influence -- then the fact that there

are multiple minors.  If you contend that they aren't grouped together you're throwing out that specific offense characteristic, and we would contend to the Court that's double counting.  You're getting penalized.  The defendant would with sentenced for the same crime which is the specific offense characteristics that he's getting under 3G1.3(b)(1) and (2).  If you don't allow grouping then it's -- I would contend to the Court clearly it is double counting.  That argument is made in my sentencing memorandum.

Would the Court like me to go on to my last objection?

THE COURT:  No.  I want to hear Mr.  Thorneloe on this one after all of that.

MR.  THORNELOE:  Your Honor, I don't watch much TV.  But have you seen the commercial with grandma and she's putting pictures on the wall, and she says this is my family and this wall is my Facebook?

THE COURT:  Right.

MR. THORNELOE:  And at the end it they say that's not how that works.

THE COURT:  Right.

MR.  THORNELOE:  Well we have that here today.  If I could get the dot cam up for both sides.  Your Honor, let me just, if I may, go to the most simple explanation

1   of this which is used in the guidelines.  This is the

2   example from the guidelines.  It gives the example of a

3   robbery of a bank at a military post giving us federal

4   jurisdiction of everything that happens there with an

5   assault on one teller.  Okay?  So the robbery has this

6   higher offense level and it gets enhanced for the

7   assault; right?

8          There's this assault behavior, a higher specific

9   offense characteristic for that assault.  Not every bank

10  robbery has an assault.  So the final total of 24 instead

11  of 20.  And then he's also charged with assault, a

12  separate count, right?  A separate harm than the bank

13  robbery.  And the offense level for that ends up being a

14  19.  And the way this 3D1.2 works under level -- Part C

15  says we're going to merge those two together because the

16  specific offense characteristic of the bank robbery, the

17  assault, already accounted for the assault, so to not

18  group them.

19         And I have some examples on the screen here, Your

20  Honor, that would double count, that harm.  You'd give

21  them an offense -- a specific offense characteristic for

22  that assault, but then you'd hit them with a unit level

23  enhancement, too, for nothing more than the assault.

24  Double counting.  Impermissible.  Not okay.  Well that's

25  not what we have here.  Instead, let's look at our case.

1   And I have a worksheet that explains our case as well.

2         So what we have, instead, is one count of

3   conviction that the special instruction tells us to treat

4   as three counts.  Three counts of transportation.  And

5   nothing of the special -- the specific characteristic

6   enhancements is double counting.  The undue influence,

7   custody, care or control.  That's not what Count Two and

8   Count Three are.  Count Two and Count Three that we've

9   created for the guidelines for this case are accounting

10  for the harm that exists when you have multiple victims.

11  The multiple victim harm is not otherwise counted.  So if

12  you were to follow the logic of the defense the defendant

13  would get the same sentence whether he drove one child to

14  some harmful place or a school bus full of children, and

15  that's not true.

16        The guidelines have said that some things we group

17  together, like, financial crimes.  We just keep adding

18  the money and we don't do additional unit level

19  enhancements.  But violent crime, sexual crimes to

20  individual victims.  We recognize that each one of those

21  victims is worthy of recognition for that harm it's

22  specific to that person.  They've come in here and

23  they'll tell you it affected me this way and me this way.

24  So what we do is we do that unit level enhancement.  And

25  they don't group.  That's because we're going to enhance

1   it under that level.  So we get three more points.

2   There's no double counting.  We can't find any case law

3   that supports this interpretation.  We don't even see

4   this guideline invoked very often.

5        But the example from the bank robbery, that's when

6   you're going to see.  You're not going to see it in a

7   case like we have today.  It's just clearly a

8   transportation of a child across state lines.  That

9   special instruction says what it says.  It absolutely

10  does say you shall treat those as separate counts and,

11  so, we have.  The Court should overrule this objection..

12        THE COURT:  Okay.  The objection is overruled.

13        Next objection.

14        MR.  GULDEN:  Thank you, Your Honor.  The next

15  objection deals with page 15, paragraph 42, which is the

16  Chapter 4 enhancement.  The Chapter 4 enhancement,

17  4B1.5(b) reads, in any case in which the defendant's

18  instant offense of conviction is a covered sex crime --

19  I'm going to paraphrase the next little bit; it doesn't

20  apply -- and the defendant engaged in a pattern of

21  activity involving prohibited sexual conduct, the offense

22  level shall be five plus the offense level determined

23  under Chapter 2 and Chapter 3.

24        In that -- embedded in 4B1.5(b) are a couple of

25  word phrases that are defined within the application

1   notes.  In any case, in which the defendant's instant
2   offense of conviction is a covered sex crime we're not
3   objecting to.  That neither 4B1.1 nor subsection (a) of
4   this guideline applies; we would agree with that.  And
5   the defendant engaged in a pattern of activity involving
6   prohibited sexual conduct.  First, you have to look at
7   what is a pattern of activity?  Then you would have to
8   look at what is prohibited sexual conduct?

9       We'll start with prohibited sexual conduct
10  includes any offense described in 18, U.S.C.,
11  2426(B)(1)(a).  That does include Chapter -- that does
12  include 18, U.S.C., Chapter 117 which includes 2423,
13  which our client has been charged with.

14      The second part of that, prohibited sexual -- a
15  pattern of activity.  And this is where a pattern of
16  activity has been defined in the application number 4(b).
17  A defendant engaged in a pattern of activity involving
18  prohibited sexual conduct if on at least two separate
19  occasions the defendant engaged in prohibited sexual
20  conduct with a minor.  If the defendant engaged in a
21  pattern of activity involving prohibited sexual conduct
22  if, on at least two separate occasions, the defendant
23  engaged in the -- in prohibited sexual conduct.  The
24  issue that we have with this is the determination or the
25  Court's use of the conjunctive "and" and how it affects

the latter part of that being a pattern of activity.

I can explain it like this. If you look at the conjunctive word "and," the Court's interpreted Congress' use of that word to mean separate element, not that you can dispense with any one of the elements that has been separated by "and." So in this case, under 4B1.5 in (b), you have a case in which the defendant's instant offense of conviction is a covered sex crime. So you have a covered sex crime and the defendant engaged in a pattern of activity.

Your pattern of activity is two separate occasions -- two separate occasions of prohibited sexual conduct. The way I look at it, the way that I would contend the Court should interpret it, is that there has to be two separate -- separate from what? Separate from the instant offense or separate from each other? There's no further explanation as to, are the instant offense occurrences separate from a second one? Or, is the instant offense one and then the pattern are two separate from the instant offense? We have recited case law that indicates that if there is no explanation and the definitions in the statute or the discussions -- the applications in the sentencing guidelines are ambiguous -- for a baseball analogy, the tie goes to the runner, the runner being the defendant. Because they're -- in

the factual basis there were two instances, one in 2010
and one in 2011, we would contend that it fails to meet
the pattern of conduct because there is only one
additional separate instance.

The application note 4B(ii).  The government
contends in their response that this clears up or
clarifies any ambiguity.  4B(ii) says an occasion of
prohibited sexual conduct may be considered for purposes
of subsection (B) without regard to whether the occasion
occurred during the course of the instant offense or
resulted in a conviction.  I would contend to the Court
that specific language doesn't cut against us, it cuts
towards us.

It cuts towards us because it talks about an
occurrence that occurred during the course of the instant
offense.  If they wanted the instant offense to account,
it could have said this:  An occasion of prohibited
sexual conduct may be considered without regard to
whether the occasion is the instant offense, or if the --
or if it resulted in a conviction.  It could have even
have said an occasion of prohibited sexual conduct may be
considered without regard to whether the occasion would
-- it could have said without regard to whether the
occasion during the course of the instant offense and
committed one other predicate act, one other prohibited

1  sexual conduct.

2      There are a multitude of ways that Congress could

3  have cleared up this ambiguity.  I would contend to the

4  Court that we, as adults, tend to think too much.

5  Walking down the street here, we talked about a dog

6  bakery.  Do they cook dogs at that bakery?  They do not.

7  A minor child on the street could read that and think oh,

8  my gosh.  They cook dogs.  But the simple words expresses

9  a different meaning to different people.  Looking at this

10 in simple words I would contend to the Court, by the use

11 of the conjunctive "and," requires three things.

12      The defendant's instance offense is a covered sex

13 crime, and -- that's one instance offense, the sex crime

14 -- and the defendant engaged in two separate occasions,

15 two separate from the instant offense.  Because we

16 already have the instant offense covered.  You can't do

17 away with the fact that before the conjunctive "and"

18 Congress said there is that one instant offense and two

19 separate occasions.  Two means two, not one additional

20 one.  In the application note like I talked about, they

21 could have easily remedied that by just saying regardless

22 of whether one of the occasions is the instant offense.

23 What they said is, regardless of whether one of the

24 occasions occurred during the course of the instant

25 offense.

1    There are cases that the government cited that

2  talks about -- they're not precedent for this court;

3  they're in different circuit courts.  All of those cases

4  that the government cited, United States Brocksmire,

5  United States v Al-Kalan, United States v Roha, United v

6  Evans, and United States v Rothenberg.  The facts of all

7  of those cases involved the instant offense, and at least

8  two others some of them involved up to a hundred other

9  pornographies.  Some of them involved years of abuse with

10  two minor victims, and some of them involved -- some of

11  them involved several trips with different minor victims

12  engaging in sexual intercourse over years of time.

13    So I would ask the Court to consider that --

14  independent of those authorities, consider the fact that

15  the government, if they wanted it only to be two

16  offenses, regardless of the instant offense, they could

17  have easily corrected that.  We would contend because the

18  Court has corrected paragraph 15 -- or page 15, paragraph

19  35, indicating that it was two instances -- 2011 and 2012

20  -- and that it's -- there is no pattern of activity and,

21  thus, the five level enhancement applies.

22    We also, in that, would object that it is double

23  counting in the instance that double counting occurs when

24  aspects of that crime have already been punished, then

25  there are additional level of enhancement.  We would

contend that our sentencing memorandum speaks to that and that if the five level enhancement is applied it, too, along with the three level enhancement that the Court just overruled would actually be a double counting of the same specific characteristic and the same relevant conduct of the crime the defendant has been -- pled guilty.

THE COURT:  I think I understand your argument.

Mr.  Thorneloe.

MR.  THORNELOE:  Your Honor, I want to just start by asking us to take the plain meaning of our occasion of prohibited sexual conduct.  It says an occasion of prohibited sexual conduct may be considered for this subsection, and it says without regard to whether the occasion occurred during the course of the instant offense.  Let's ask ourselves, did the occasion occur during the instant offense?  Yes.  It may be considered then.  There's one.

THE COURT:  If there were three children there, weren't there three separate ones?

MR.  THORNELOE:  Well maybe not Your Honor.  I don't think it quite says that.  And I could see where the Court would see that.  But where he's standing in front of three children, he commits one act himself and three children see it.  I don't know that that would

accomplish a pattern necessarily. I haven't made that argument and I don't want to make it here today without more consideration.

I think the note there is clearly saying we want to consider it. The five circuit courts that have considered it said even if there were more facts in this case, they still said you could consider the instant offense. We don't have anything from this circuit, unfortunately, but we don't have anything to the contrary. It's the plain reading of the note and I think you should consider it.

If the Court really needs more comfort you could look a little further into the factual basis as well. We have an occasion where the factual basis says that the defendant caused the child to masturbate in front of him in his home in South Carolina.

THE COURT: There's plenty of activity in South Carolina. That's part of -- although that doesn't bring it in the federal jurisdiction it's part of a pattern of sexual conduct.

MR. THORNELOE: Sure. And it doesn't have to be a federal offense to be one of the occasions. It has to meet certain types of conduct which this masturbation in front of him does meet. I think you have easily -- I think you have these two; you may even have four. And I

1   think this note in the guideline says that it can be the

2   instant offense, you should consider it -- that it should

3   be -- and you should apply this enhancement, Your Honor.

4        THE COURT:  I think there's plenty of evidence of

5   a pattern of sexual conduct that meets the standard.  The

6   objection will be overruled.

7        Any other ones that affect the guidelines?

8        MR.  THORNELOE:  Your Honor, with respect just to

9   the argument of double counting.  Generally, the argument

10  is that the 4B1.5, along with other enhancements that

11  have applied, amount to double counting.  Well they don't

12  because it's not impermissible double counting.  Even if

13  it is double counting in some sense, it's not

14  impermissible because Chapter 4 says these enhancements

15  shall be cumulative to Chapter 2 and 3 enhancements.  So

16  the guidelines specifically said yep, we're adding on

17  here and there's different reasons for those different

18  enhancement.  So we think they should apply.

19       THE COURT:  I don't think there's any improper

20  double counting but I do believe that there is a pattern

21  of activity.  So those enhancements are going to be added

22  on.  All right.  Any further objections that affect the

23  guidelines?

24       MR.  GULDEN:  No further objections that we have

25  to speak of.  We'd just to heard at sentencing.

1          THE COURT:  Very good.  Then it would appear that,

2  as far as the guidelines are concerned, this is a -- the

3  advisory guidelines call for a total offense level of 37,

4  a criminal history category of I, and a guidelines

5  sentencing range of 210 to 262 months.  Does the defense

6  agree with the Court's ruling on the objections, which

7  the defense disagrees with, that that is the appropriate

8  guideline range?

9          MR.  GULDEN:  Yes.  With the defense's objection

10  and disagreement with the Court overruling those

11  objections, we would contend that 37, given credit for

12  the --

13          THE COURT:  Three levels of acceptance, right.

14          MR.  GULDEN:  That is correct.

15          THE COURT:  Okay.  Thank you.

16          Does the government agree?

17          MR.  THORNELOE:  I do, Your Honor.

18          THE COURT:  All right.  Are there any motions for

19  departures or variances from the government?

20          MR.  THORNELOE:  There are not, Your Honor.

21          THE COURT:  All right.  I will hear from the

22  defense.

23          MR.  THORNELOE:  Your Honor, just briefly.  I do

24  have one victim here who wants to address the Court.  I

25  think before we argue it would be an appropriate time for

1   that victim to come forward.

2          THE COURT:  Okay.

3          MR.  THORNELOE:  Your Honor, I have the mother of

4   one of the child victims.  This is Ms. Debbie O..

5   Ms. O, if you could come forward.  You can just stand in

6   my spot here, Ms. O.  If you could address the court.

7          MS.  O.:  I have to speak to you as a mother.

8   That's all I can do.  I can't tell you the effect this

9   has had on our children.  I listened to all this legal

10  stuff and I know it has to be done, and I realize that,

11  but you have no clue.  I've heard over and over that --

12  it's gotten back to us that, well, he didn't do this and

13  he didn't do that.  You're fortunate for that.  That

14  makes no difference in what our child has been through --

15  what our children have been through, the amount of

16  counseling we've set through, the number of nights we've

17  stayed up and talked to this child.  The number of -- you

18  know, he didn't -- I can't tell you how he betrayed us as

19  a church family, as a family.  You know, it takes a

20  village to raise a child.  And you take your kids to

21  church and you put them in a village that you think you

22  can trust.  We did our homework on this person.  We went

23  to church with him for years.  We asked the questions to

24  people who had known him all his life, basically, and yet

25  he still -- you know, we thought we could trust him.  We

1 did.

2      Some of this crazy stuff happened on church
3 property in downtown Anderson, within a half a mile of
4 Anderson University.  You know he had no qualms.  I can't
5 tell you incident after incident after incident of things
6 that our son has recounted to us that happened.  No, it
7 did not all happen up here but -- there is a multitude of
8 things that happened in South Carolina just repeatedly
9 over and over and over.  And our child has lost his
10 childhood because of this, because of this person that we
11 trusted who went to church with us and who worshipped
12 with us.

13      You know, I can't see any remorse in him.  I'm
14 sorry but I don't see any, you know.  Maybe so because
15 he's admitted he did it.  Our boys are going to school.
16 They're thriving because of counseling and prayer and
17 guidance.  You know, we've invested so much in these kids
18 and he's not going to ruin their lives, he is just not.
19 Our son would have been here today but he's at Clemson
20 University and he had a calculus class this afternoon.
21 But he gets so upset when he sees this man.  The last
22 time we had him in court he cried for the entire hearing,
23 and he's 6'3".  Try, as a parent, to sit and watch that
24 happen.  I can't tell you what we've been through with
25 this kid.  It has altered his life and ours forever, you

know, but he is going to be all right and we'll see to
that. He is going to be okay in spite of Joseph Harold
Patterson.

You know he doesn't have enough years left in his
life to pay for what he's done to these kids. I'm sorry,
he doesn't. And I know that's probably wrong of me to
say but I can't help it. That's how I feel as a mother.
How dare you? How dare you? You know, I don't know what
else to say. I could stand up here and tell you incident
after incident after incident. He gave our kid two cases
of beer on the 4th of July, at 16 years old, and he hits
a car head-on. He could have killed himself. You know
that sort of stuff never even makes it into this
courtroom. All the stupid, crazy -- he went to my son's
job, when all this started, caving in on him.

He went to my son's job and tried to get to him at
the golf course. This kid is 17 years old and petrified.
These kids are petrified of this man. You know it
doesn't count, the stalking, cyber-stalking, you know,
the pinpointing every movement they've made with his cell
phone. On his computer he watched them like hawks. You
know I don't know how he had time for that at work but he
did. I mean it just goes on and on and on. It would
make a really good TV movie, but I hope I never have to
sit and watch it. You know, it's terrible.

1    But I just wanted to tell you, as a mother, that

2  this has been horrendous.  No parent should ever get the

3  phone call I got at work from the Anderson City Police

4  Department saying you need to come and you need to come

5  right now.  And my first words were, what's he done?

6  He's 17 years old.  You think all kinds of crazy stuff.

7  And she said oh, no, he hasn't done anything.  You know,

8  you get this information from an investigator and you

9  don't -- you can't process it.  I mean it's just -- I

10 don't know what to say, but I can tell you this.  My

11 kid's going to be okay in spite of this man, in spite of

12 him.  Thank you.

13     THE COURT:  Thank you, ma'am.

14     MR.   THORNELOE:  Your Honor, before we move in to

15 argument, I did receive an e-mail from a Ms. Angie J.,

16 mother of one of the other child victims in this case.

17 She expressed her regret for not being here.  But what

18 she said is that her son is returning to college this

19 weekend and will be away for a little while.  She didn't

20 want to come here with him or just by herself and have

21 this experience be her last -- one of the last events of

22 his summer.  So they decided to spend time together as a

23 family and then allow me to just express the case on

24 their behalf.  But they wanted me to let you know that

25 they are thinking about today.  And that's the reason

1    they didn't come.

2          THE COURT:  Okay.  And the Court read the victim

3    statements in the file.

4          MR.  THORNELOE:  I'm sorry, Your Honor.

5          THE COURT:  I read the victim statements which are

6    part of the file.

7          MR.  THORNELOE:  Thank you.

8          THE COURT:  I've read those.

9          All right.  I'll hear from the defendant on

10    sentencing.

11          MR.  GULDEN:  Good afternoon, Your Honor.  Brian

12    Gulden for the defendant in this matter.  Thank you for

13    your patience with my previous arguments.  In the

14    sentencing memorandum that we have submitted we have

15    addressed several issues.  I think I'm going to maybe

16    start at the back end first and ruin the surprise for

17    everyone.  But we did -- we would ask the Court -- we

18    moved for a downward departure.  Under 18, U.S.C.,

19    3553(b)(ii), it talks specifically about child crimes and

20    sexual offenses.  And it specifically finds in sentencing

21    the defendant convicted of an offense involving minor

22    victims, which the offense is under this Chapter 117

23    which it is the Court -- it says within the range

24    reference and subsection the Court finds that there

25    exists circumstances -- mitigating circumstances of a

1   kind or degree that have been specifically identified as

2   a permissible ground for a downward departure in the

3   sentencing guidelines has not been taken into

4   consideration by the commission informing those of the

5   guidelines and should result in a sentence different from

6   that described.

7       Sentencing guidelines under -- I think it's 5K2.22

8   talks about in sentencing a defendant convicted of an

9   offense involving minor victims where the offense is a

10  crime under Title 117 -- Chapter 117 of Title 18.  The

11  Court may consider a reason to downward depart if it is

12  permitted by 5H1.1 and 5H1.4.  5H1.1 talks of age.  5H1.4

13  talks about physical infirmity.

14      The individual who just came up and spoke

15  indicated -- spoke just briefly about Mr. Patterson's

16  age.  But I will tell the Court he is 58, soon to be 59.

17  Even at the statutory minimum of ten years he will come

18  out and be 69 years old -- 69 -- very close to 70.  I've

19  attached to my sentencing memorandum that talked about

20  recidivism rates, individuals over the age of 60 and/or

21  over the age of 69.  Upon release, I believe it's a 6.9

22  percent chance of recidivism.  A 6.9 percent chance,

23  although involving children may seem high.  It is the

24  lowest recidivism rate out of any of the other categories

25  that they looked at.  That would be an individual with a

prior criminal conviction or a younger individual with no
prior convictions.

This individual, at the age of 58 upon sentencing,
69 or 68 upon release, has the least likely percentage
chance of being involved in criminal activity again.  Not
to mention that he's going to be under potentially
lifetime supervision which, then, further decreases the
likelihood of recidivism.  So we would ask the Court to
consider that:  The age, the age upon his release, and
the study that talks about the recidivism.

Also, we would ask the Court to consider
Mr.  Patterson's physical condition.  Again, he was 58
years old, which by no means is old, nor will 68 be upon
his release, but he suffers from a condition in which --
and I have no medical doctor, I don't claim to be, but I
believe it is a medical condition in which too many red
blood cells are produced in your body.  It creates a
serious condition that is treated by withdrawing blood,
bloodletting, and Mr.  Patterson has had that regularly
and reoccurring during his lifetime to treat that
condition while in custody.  As of now he hasn't had any
of that.  I can only imagine that the marshals will do a
wonderful job with him in the detention facility that
he's going to go to and see to it that his medical needs
are met.  However, that goes to his physical condition.

1        We have submitted letters of support for

2   Mr. Patterson by his family, by his brother-in-law, John

3   Ritchie, and his nephew, I believe, Eric Ritchie, who

4   both have indicated that during the time he's been in

5   custody, for the last two years, that they have noticed a

6   significant decline in his health. Once a strong and

7   vibrant man, now weak, broken, disheartened. Yes, of

8   course, detention is going to do that to you.

9        While he's been in custody for the two years,

10  during that period of time, his wife was diagnosed with a

11  rapid -- with a very aggressive form of cancer; three

12  months later she died. She died. She was diagnosed,

13  received treatment, and passed way away, all within three

14  months. During those three months, Mr. Patterson was in

15  custody. Again, detention is going to break somebody.

16  Having your wife diagnosed with cancer is going to break

17  somebody. Having her pass away while you're in custody

18  is going to break somebody. But the mere fact that his

19  medical condition also decreases, also hinders his

20  improvement, weakens his physical state. We would ask

21  the Court to consider that in a downward departure.

22        I will tell the Court, in all fairness,

23  immediately before Mr. Patterson's wife died he received

24  a bereavement release from the state of South Carolina so

25  that he could go up and be with his wife when death was

eminent.  He reported directly to his house.  He was not under house arrest with no electronic surveillance.  And several days later, after his wife was buried, he reported back to the Anderson County Detention Facility. I think the probation officer reported accurately on that in the presentence report.  But he did have a period of time.

So I'm not saying that he wasn't there when his wife died.  At the time he got there she was under hospice care and basically unconscious.  He's certain that she was able to hear him, but she couldn't respond. All of those conditions and his age and his medical conditions have created this perfect storm in which this strong, vibrant young man is now being described by his family members as a broken old man in the matter of two years.  So we'd ask the Court to consider that.

We would also ask the Court to consider certain amendments that have been proposed back in December of 2016 and open for public comment, I believe, until march of 2017.  There was some public comments for amendments to the sentencing guidelines.  One of the particular amendments dealt with first time offenders, and it talked about a decrease of one level for first-time offenders who have never been convicted of any past criminal behavior.  And it had two options, basically:  Just a

blanket one level decrease, or the second option would be
for crimes with a base offense level less than 16. For
the first time offenders with no prior criminal history
two level or, for base offense levels over 16, a one
level.

Either way, whether it's option one or option two,
I would ask the Court to consider that as relevant policy
statement indicating that the guidelines at some future
time when Congress reviews them, and may codify them,
that there may be a one level -- strike that -- a one
level reduction for an individual in my -- for a
defendant -- a client in my client's position. A one
level enhancement -- a one level reduction may not seem
like that much, but in this situation it could amount to
the potential reduction of the sentencing for 17 months.
Seventeen months, when you're talking about 210 to 260,
is significant. I can say significant. A lot happens in
17 months. Two school years could potentially happen in
17 months, or a year and a half could go by for 17
months.

Also, the Court, in considering the factors set
out in 18, U.S.C., 3552, we would ask the Court to
consider some Fourth Circuit cases so as not to impose a
disparate sentence for similar relevant conduct. I cited
them in my brief, United States v Fugit and Grubbs. In a

case United States v Fugit, similar activity not charged
with 18, U.S.C., 2423.  I believe it was 18:2422.  The
crime involved two occasions.  The Court -- and it also
involved some child pornography, but I don't need to get
into that.  But on the two occasions he appealed the
sentence which the Court, for very similar circumstances
as presented to this case, the Court imposed a 70-month
sentence.  Now the defendant did get a significant amount
of sentence under the child pornography but a 70-month
sentence below that statutorily required under 2422.

In the Grubbs case, it dealt with a teacher and
two child victims were part of the indictment.  Nine
other victims in the case made statements.  Eight of
those nine victims indicated that the teacher at one
point, whether it was at one school or the other, began
calling these students in to tutor them after class,
began with kissing, then oral sex and intercourse, then
travel with the intercourse.  That's two victims that
were part of the indictment but nine other victim
statements.

The Grubbs defendant had zero prior convictions.
The Court looked at the base offense level and made all
of the enhancements and the reduction for acceptance of
responsibility and only yielded an offense level of 34,
with almost -- without the sexual intercourse.  But

1  almost the exact same specific two individuals in the

2  indictment came up with a 34, and the guideline

3  recommendation was 151 to 180.

4      In all can candor to the Court, the judge imposed

5  a sentence of 240 months.  We are not asking the Court do

6  that.  The Court did it for several different reasons

7  inapplicable to this case, and that had to do with the

8  numerous counts and the acts of physical contact.

9  There's been no allegations of physical contact.  There's

10  been no pictures, no videos, no distributions of any of

11  that kind in the grubs case in the grubs case the

12  guidelines were 34.  Here, over my objections, the

13  guidelines are 37 and it involved no physical or sexual

14  contact.

15      So we would ask the Court to consider those two

16  cases in imposing a fair sentence, which we would contend

17  would be closer to the statutory minimum of ten years,

18  potentially up to 144 months, which would be 12 years.

19  And I'll tell you where I get that number from.  The

20  state of North Carolina in a crime -- in this crime, had

21  it occurred solely in the state of North Carolina, would

22  be classified as a class C felony.  The Court is probably

23  very familiar with a class C felony.  With a prior

24  criminal history level of one for no prior convictions,

25  that would result in a maximum sentence, I believe, of

1  148 months, but 60 of those would be for pretrial --

2  strike that -- post-trial -- post-release supervision.

3  The minimum of that would, again, be a range in 73

4  months.  So the range could be 73 months up to 148.  That

5  would be in the state of North Carolina.

6       I would contend to the Court that if this Court,

7  in considering all the downward departures, the policy

8  statements, the amendment, the fact that other crimes

9  which are more vicious than this crime, have lower base

10  offense levels, and the fact that the state of North

11  Carolina would -- could impose a sentence between 73 and

12  148 months.  We would ask the Court to consider all of

13  that in imposing a sentence in the range of a statutory

14  minimum of ten years to no more that be 144 months.  We

15  would ask the Court for that consideration, respectfully.

16       THE COURT:  Thank you, sir.

17       What would you like to say, if anything?

18       THE DEFENDANT:  Your Honor, I've always been an

19  honest, hard working, taxpaying man.  When I had to

20  resign from my job, my career spanned 36 years, all with

21  the same company.  But I messed up here and I take full

22  responsibility for my actions.  I'm not a bad person.  I

23  just made a bad decision.  I don't want this decision to

24  define who I really am for the rest of my life.

25       I'd like to sincerely apologize today to the

courts, my church, and especially to the families
involved in this.  I show no hatred or malice toward
anyone, and I wish everybody the best of luck in life.
And I'd like to close with a scripture passage from the
bible, the book of Nehemiah, Chapter 5, Verse 19 says:
Remember me with favor my God for all the good I have
done for these people.  Thank you, Your Honor.

THE COURT:  Yes, sir.  Thank you.

Mr.  Thorneloe.

MR.  THORNELOE:  Your Honor, it would be easy to
walk down a road where we say to ourselves this case
isn't like most of the transportation cases that come in
to federal court because it's not a contact offense.  But
that would be a decoy, wouldn't it?  Because this offense
isn't a contact offense.  It's an intent crime.  When he
crosses that border, what does he plan to do?  And all of
the enhancements that have been learned today -- and well
earned I might add -- they aren't about contact
offending.  They're about taking children in to your
custody and abusing the trust that comes with that.

In this case, in one of the worst ways imaginable,
in a church, in a place where people are looking for the
best in each other, that an individual insinuates himself
there and takes advantage of people there and offers fun
trips with kids.  We're going to go have a good time in

the Smokies.  And then what does he actually intend?
Well this isn't a single decision this individual made.
This is this person's life.  This is a secret that he
held and he tried to keep from others from, people on
both sides of this aisle, from the people that he would
never share that with, and the people that he would
eventually victimize.

This is a person who did not make a single
decision -- his elocution reminds me of one of the
statements he made in the beginning.  How come nobody
remembers all the good things I've done; they only
remember the bad parts?  This is an individual who pities
himself, who doesn't particularly feel bad about what
happened, and wants you to think of the fact he paid some
taxes.  Well this is an individual who threw away a lot
of blessings in life and abused the trust of others for
his own sick, twisted purposes.

And if you want to think about it, this is
actually a relatively rare case.  Your Honor, we don't
have many people that were able to paint the picture of,
sort of, the traditional creepy guy on the street in the
neighborhood who's inviting kids over, he's giving them
beer -- he's grooming them is what he's doing, Your
Honor, and he's doing it in different generations as
well.  What we see is we had offense conduct in 2010,

1   2011, and then years later we had new offense conduct in

2   the bathroom at the church.  There's no place he won't

3   go, there's no group of children he isn't willing to take

4   advantage of.  And he's fooled a lot of people in his

5   life.  I hope he doesn't fool this court.

6          I think he is deserving of a guideline sentence

7   and you have a range with which to do that.  I think he's

8   earned every one of these enhancements.  We don't have

9   any arguments that they're not deserved, that they're not

10  empirical, or something like that.  We have evidence

11  before this court for each enhancement and why they apply

12  and why he deserves them.

13         I ask this court to give a guideline sentence, a

14  lifetime of supervised release, and to consider the

15  restitution requests that are in here and give these

16  families a small amount of money that can't even begin to

17  cover their harms.  And I think that would be a just

18  sentence from this court today.  Thank you, Your Honor.

19         THE COURT:  All right.  Thank you.

20         In considering the 3553(a) factors, while

21  pronouncing sentence, the Court will be considering the

22  nature and circumstances of this offense, which is a

23  very, very, very bad offense.  It will consider the

24  history and characteristics of the defendant, some of

25  which are good and some of which are bad.  I'll take

those in to consideration.  The nature and circumstances
of this offense:  Taking these children and abusing the
trust put in you is a very, very bad thing which is why
these guidelines are as high as they are.

     The Court has to give serious consideration before
it departs or varies from any of these guidelines.  This
sentence needs to reflect the seriousness of this
offense, promote respect for the law, and provide just
punishment for this offense.  It also needs to afford
adequate deterrence to this criminal conduct.  That is,
to others who might do this.  Unfortunately, we
frequently hear that there are others who are doing this
kind of activity to children, sometimes using it in the
-- under the guise of the church, sometimes among the
Scouts, sometimes in camping.  But it's also an abuse of
trust.

     Unfortunately, it appears that some of the
sentences and things that have happened have not yet
deterred the criminal conduct which continues to plague
the people and children.  This sentence is to protect the
defendant with needed -- I mean protect the public from
further crimes of the defendant, and this sentence will
do that.  It's going to be a significant sentence, and it
will protect for some years the defendant by prison bars
and for other years by supervision.

1    The Court will order that the defendant gets

2  educational or vocational training if he needs it,

3  medical care, and the other treatment he needs in the

4  federal prison system.  The federal system is good at

5  providing these things to the inmates that are there.

6    The Court also needs to avoid unwarranted

7  sentencing disparities among defendants and to provide

8  restitution to the victims of the offense.  The Court has

9  considered all of these factors in fashioning a sentence

10  in this case.  After considering all of those factors,

11  the Court believes that a sentence within the guideline

12  range is appropriate.

13    Therefore, pursuant to the Sentencing Reform Act

14  of 1984 and U. S. v Booker, it is the judgment of the

15  court, having considered the factors noted in 18, United

16  States Code, Section 3553(a), the defendant, Harold

17  Joseph Patterson, is hereby committed to the custody of

18  the United States Bureau of Prisons to be imprisoned for

19  a term of 210 months.

20    The Court chooses the low end of the guideline

21  range in consideration of the good factors of the

22  defendant and in consideration of other crimes which may

23  have been committed against children.  But it also picks

24  the guideline range because of this pattern of sexual

25  abuse of children which took place over these periods of

1    years.

2         The Court recommends that the defendant

3    participate in a sex offender treatment program while

4    incarcerated, if eligible.  Upon release from

5    imprisonment, the defendant shall be placed on supervised

6    release for a term of life.  The Court chooses Life

7    because of even though the defendant is will be an older

8    person when he gets out.  Based on this sentence, he will

9    be in his 70s.  The supervision is needed because of the

10   pattern of conduct shown and what this defendant did over

11   a period of time which involved sexual contact sexual

12   abuse of children.

13        Within 72 hour of release from the custody of the

14   Bureau of Prisons the defendant shall report in person to

15   the probation office in the district to which the

16   defendant is released.  While on supervised release, the

17   defendant shall not commit another federal, state or

18   local crime, and shall comply with the standard

19   conditions of supervised release and the standard sex

20   offender conditions of supervised release that have been

21   adopted by the court in the Western District of North

22   Carolina.

23        It's further ordered the defendant shall pay the

24   United States a special assessment of $100.

25        It's further ordered, having determined the amount

of restitution owed to each victim, that the defendant
shall make restitution pursuant to 18, United States
Code, Section 2248 and 3663, as directed, to the United
States district court clerk to be paid to the following
victims in the following amounts.  Mr. and Mrs. J., $649
06; Mr. and Mrs. O., $3,889.36.

Any discussion about fines in this case?

MR.  THORNELOE:  Your Honor, the government hasn't
advocated for that.  This doesn't normally come up.  We
don't normally have defendants who have the ability to
pay a fine.  I know in this case this is an individual
who has some assets.  The government is not opposed to
any fine that you would see appropriate.

THE COURT:  Let me hear from the defense on that.

MR.  GULDEN:  Your Honor, I know that the fines
the Court can impose are significant.  I would ask the
court to consider the fact that Mr. Patterson is going
to be in custody for 210 months.  The fine serves no
other deterrence.  A big fine, I would contend to the
Court -- I would have argued a big fine would have hurt
him more than jail time, if the Court was considering a
lesser than guideline range sentence.  But I think adding
on to the 210 with a big, significant fine would show --
would not fit into any of the factors that the Court has
spoken of under 18, U.S.C., 3553.  It doesn't add any

1  additional deterrence, so we would ask the Court not to

2  consider a fine.  Thank you.

3  　　　　THE COURT:  What family does Mr.  Patterson have

4  now that his wife has passed?

5  　　　　MR.  GULDEN:  If I heard the Court correctly you

6  asked how much family does he have?  They're sitting

7  behind me, Your Honor.

8  　　　　THE COURT:  Who are they?  I mean does he have

9  children?

10  　　　　MR.  GULDEN:  He does not have children.  He has a

11  brother and then a sister.  He was the middle child of

12  the brother and the sister, the brother being the oldest.

13  He's got nieces and then extended family from there.  So

14  he does have -- although the family is not large by any

15  stretch of the imagination, some of the income that is

16  shown in the presentence report was income derived from

17  his deceased wife's IRA that, when she passed, he was the

18  beneficiary.  And, so, although it does seem that he may

19  have a significant sum of money, the Court should

20  consider the fact that half of it may have come from his

21  wife and her estate.

22  　　　　THE COURT:  This notes that once he turns 60 he'll

23  start getting his railroad pension.

24  　　　　MR.  GULDEN:  I believe that is correct.  I don't

25  know how -- he won't get Social Security.  I don't think

he would get Social Security if he was in custody. I
don't know if the railroad pension is different than
that, while the government would be taking care of him,
if the railroad pension would in fact kick in. He was
slated to get it when he turned 60. I'm not well versed
in the fact -- just like if he was slated to get it at
65.

     THE COURT: I think he'll get it while he's in --
I think it will go into a bank account somewhere. I
think he gets it. I think that's an earned pension. I
don't think they --

     MR. GULDEN: It's not subsidized by the
government.

     THE COURT: Yeah.

     MR. GULDEN: I don't know how that's treated.

     THE COURT: Have there been any lawsuits by any of
these children against him?

     MR. GULDEN: Not yet, Your Honor. I think the
children have just reached the age of majority. I don't
know anything about South Carolina law --

     THE COURT: I think I'm going to leave the fine
off.

     MR. GULDEN: Thank you, Your Honor.

     THE COURT: If there's anything there, maybe it
can go to some kind of child help or something for these

1  children at some point.

2       All right.  What's the fine range in this case

3  though?  I can't say that he's unable to pay a fine.

4  What's the low end of the guideline fine range?

5       PROBATION:  $20,000 to $200,000.

6       THE COURT:  I'm going to go to the low end of the

7  fine range, then, because I have to fine when I -- the

8  words that I always say are that the defendant is unable

9  to pay a fine and having considered the factors.  When I

10 consider factors here, it would just be falsehood to say

11 he can't afford to pay a fine.  So I'm going to go to the

12 low end of the fine.  He'll need some assets when he gets

13 out, railroad pension or not, Social Security or not.

14 And, again, maybe there's something that can be worked

15 out.

16      All right.  Having considered the factors noted in

17 18, United States Code, Section 3572(a), the Court orders

18 the defendant shall pay a fine to the United States of

19 America in the amount of $20,000.

20      Payment of the criminal monetary penalty of $100

21 is due and payable immediately.

22      The Court has considered the financial and other

23 information contained in the presentence report and finds

24 the following is feasible.  The defendant shall pay the

25 $20,000 fine immediately.

1          Is there any legal reason why that should not be

2     the sentence imposed in this case from the defense?

3          MR.  GULDEN:  Other than the arguments that were

4     made to the Court.

5          THE COURT:  Right.  Certainly the defense keeps

6     its objections to the enhancements --

7          MR.  GULDEN:  Correct.

8          THE COURT:  -- on the table for the purpose of

9     appeal.

10          MR.  GULDEN:  Yes.  Yes, notwithstanding those.

11          THE COURT:  Notwithstanding those, there is no

12     legal reason for this sentence --

13          MR.  GULDEN:  None that I'm aware of currently.

14          THE COURT:  Mr.  Thorneloe.

15          MR.  THORNELOE:  No, Your Honor.

16          THE COURT:  All right.  That is the sentence in

17     this case.

18          Sir, you may appeal this conviction and sentence

19     to the Fourth Circuit Court of Appeals.  If you wish to

20     appeal, you must enter your notice of appeal in writing

21     within 14 calendar days from when I enter the written

22     judgment in this case, which will probably happen -- it

23     will probably happen by next week.  I've got some ahead

24     of you to get done, but it may be this week.  Once that's

25     done, you have 14 calendar days to enter your written

1  notice of appeal.

2        If you wish to appeal and cannot afford to do so,

3  you may appeal at government expense.  I would suggest

4  you speak with able counsel about your right to appeal

5  and whether or not you wish to appeal under these

6  circumstances.  Do you understand your right to appeal as

7  I've just explained it to you?

8        THE DEFENDANT:  Yes, sir.  Yes, Your Honor, I do.

9        THE COURT:  Okay thank.  You.

10       Anything further from the defense?

11       MR.  GULDEN:  Nothing, Your Honor.

12       THE COURT:  Any counts to be dismissed by the

13  government?

14       MR.  THORNELOE:  Yes, Your Honor.  The government

15  dismisses all remaining counts except for Count One.  Let

16  me make sure I get this right, Your Honor.  The

17  government moves to dismiss Counts Two, Three, Four, and

18  Five, Your Honor.

19       THE COURT:  Let those be dismissed.

20       All right.  Anything further from the government?

21       MR.  THORNELOE:  Nothing further, Your Honor.

22       THE COURT:  This matter is over.

23                 (Off the record at 3:35 p.m.)

24

25

1

## **CERTIFICATE**

2        I, Tracy Rae Dunlap, RMR, CRR, an Official Court
Reporter for the United States District Court for the
3  Western District of North Carolina, do hereby certify
that I transcribed, by machine shorthand, the proceedings
4  had in the case of UNITED STATES OF AMERICA versus JOSEPH
HAROLD PATTERSON, Criminal Action Number 1:16-CR-67, on
5  August 30, 2017.

6        In witness whereof, I have hereto subscribed my
name, this 18th day of October, 2017.

7

8                        __/S/__Tracy Rae Dunlap__
                         TRACY RAE DUNLAP, RMR, CRR
9                        OFFICIAL COURT REPORTER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25